UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARL KETTLE,
LARRY BIESUZ JR., and
DAVID TREDO
on behalf of themselves and others similarly situated


                                        Plaintiff,

v.

NEW YORK STATE THRUWAY AUTHORITY;
LINEBARGER GOGGAN BLAIR & SAMPSON, LLP

                                        Defendants.
_____

## COMPLAINT

## INTRODUCTION

Plaintiffs bring this action on behalf of themselves, and other similarly situated persons, pursuant to 42 U.S.C. §1983, the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and the New York State Constitution. This suit concerns fines imposed by Defendants where timely payment has not been received for nonpayment of a cashless toll at the Grand Island Bridge. As laid out further below, the Defendants have collected, and have threatened to collect unconstitutionally excessive fines of more than 50 times the toll violation from Plaintiffs, and have denied Plaintiffs any reasonable opportunity to dispute the imposition of this fine.

## PARTIES

1. Plaintiff Carl Kettle is a citizen of the State of New York, County of Erie, and city of Buffalo, residing at 310 Roesch Ave, #12, Buffalo, NY 14207.

2. Plaintiff Larry Biesuz Jr. is a resident of the State of New York, County of Niagara, and city of Lewiston residing at 855 Page Ave, Lewiston, NY 14092.

3. Plaintiff David Tredo is a resident of the State of New York, County of Erie, and city of Buffalo, residing at 154 Delamere Rd, Buffalo, NY 14221

4. The Defendant New York State Thruway Authority (hereinafter "NYSTA") is a public corporation of the State of New York.  It consists of seven members, appointed by the governor and confirmed by the senate.  The power is vested in the exercise of the majority of the board, and the board is permitted to delegate its authority.

5. Defendant ("NYSTA") is a state actor for the purposes of §1983.

6. The Defendant Linebarger Goggan Blair & Sampson, LLP ("LGBS") is a limited liability partnership organized under the laws of the state of Texas and doing business in the state of New York.

7. Defendant LGBS collects money allegedly owed to Defendant NYSTA pursuant to its statutory authority.

8. The collection of fines and revenue is traditionally a function of the state.

9. At least some of the funds collected by Defendant LGBS would be paid to Defendant NYSTA.

10. Linebarger Goggan Blair & Sampson, LLP was therefore acting under color of state law (namely the NYSTA) at all times relevant to this complaint.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction over the Plaintiff's federal claims pursuant to 28 U.S.C. §1331 as an action raising a federal question; pursuant to 28 U.S.C. § 1343(3) as an action to redress a deprivation under color of state law of rights secured by the

Constitution of the United States. This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. §1367(a).

12. Venue lies in the Western District of New York pursuant to 28 U.S.C. § 1391(b)(2) as the judicial district in which the events occurred that gave rise to Plaintiff's causes of action.

**DEFENDANTS' POLICIES AND PROCEDURES**

13. The Grand Island Bridge toll system is operated by Defendant NYSTA.

14. The Grand Island Bridge toll station was, at the times relevant to this complaint, a cashless toll facility.  This means that the only way to pay a toll at the Grand Island Bridge was to have an EZ-Pass.

15. EZ-Pass is an electronic toll collection system that allows individuals to prepay their tolls, thus eliminating the need to stop at a toll plaza.  The system has three components: a toll tag, which is placed on the vehicle; an overhead antenna, which reads the toll tag and collects the toll; and video camers to identify toll evaders.  EZ-pass maintains records regarding each user's usage and account balance.  Users can associate a credit card with their EZ-pass, or they can deposit money ahead of time into their EZ-pass account to pay their tolls.

16. If an individual shows up to a cashless toll facility without EZ-pass, they are unable to pay the toll.  The EZ-pass system will take a photograph of their license plate to record the incident.

17. On information and belief, EZ-pass will then forward the information to Defendant NYSTA, which will determine the appropriate action.

18. If an individual without EZ-Pass were to call Defendant NYSTA, or EZ-pass, immediately after going through a cashless toll system, there would be no way for them topay the toll.  They have to wait.  On information and belief, it will be at least a week before they are able to pay the toll by phone or online.

19. It is the policy of Defendant NYSTA to eventually send out a notice when it has evidence that a car registered to a New York state resident has crossed the Grand Island Bridge without paying the cashless toll.

20. The notice demands $1.00 per crossing, which is equal to the amount off the cashless toll.

21. The most current version of this notice also permits the submission of a dispute, for the following reasons: (a) the vehicle has been sold; (b) the license plate(s) have been surrendered; (c) the vehicle/plate was stolen; or (d) the license plate and/or vehicle is not registered to me and I did not rent and/or lease it.

22. A sample of the notice described in the preceding paragraphs, taken from Defendant NYSTA's website, is attached as **Exhibit A**.

23. The notice does not permit a dispute for good cause shown, but only the four reasons listed in paragraph 21.

24. The clear language of 21 NYCRR §1021.3(d)(4), however, permits an individual to dispute a toll for "good cause shown." Thus, the notice misleads recipients about their legal rights.

25. This notice will also often impose a $5.00 "late/other fee."

26. NY CCR§101.3 does not provide any authority for the imposition of a "late fee." Rather, it permits Defendant NYSTA to charge up to a "$100" administrative fee. There is no regulatory or statutory authority for this $5.00 late fee.

27. If Defendant NYSTA's records indicate that no response is made to the initial notice, it will eventually send out another notice, entitled "Notice of Violation Enforcement IMPENDING COLLECTION/LEGAL ACTION."  This notice imposes a fee of $50.00 per violation.

28. At this point, the $5.00 late fee referred to in ¶25 often disappears.

29. This notice does not provide any way for recipients to dispute the imposition of this fee.  A sample of the notice sent to Plaintiff Kettle is attached as **Exhibit B**.

30. If payment could not be secured by the New York State Thruway Authority, they would refer the matter to Defendant LGBS, who would in turn collect the debt owed to the New York State Thruway Authority (hereinafter "NYSTA").

31. While the notices sent out by Defendant LGBS do state that it will investigate the validity of the amount alleged to be owed upon receipt of a request for verification, once again, no legal process is provided to dispute the fines owed.

32. At least some of the funds collected by LGBS would be paid to the NYSTA

33. LGBS purports to be enforcing the statutory and regulatory rights of the NYSTA.

34. LGBS was therefore acting under color of state law (namely the NYSTA) at all times relevant to this complaint.

## FACTS PERTAINING TO PLAINTIFF CARL KETTLE

35. Plaintiff Carl Kettle is the owner of a vehicle with a New York License Plate # HYL9413.

36. On September 21, 2018 Plaintiff Carl Kettle received a notice from the New York State Thruway Authority, claiming that he had traveled over the Grand Island Bridge without paying the cashless toll on June 7, 2018 (twice), and June 14, 2018 (twice).

37. The notice further alleged that he had not responded to two prior notices asking him to pay.  However, Plaintiff disputes that he received any prior notice.

38. The notice indicated that he was assessed a bill of $204.00 (of which $200 were administrative fees).  It did not include any mechanism for him to dispute either that he had passed through the toll, or the imposition of the administrative fees. A true and correct copy of this notice is attached hereto as **Exhibit C**.

39. Plaintiff subsequently submitted a written letter to the New York State Thruway Authority, along with a money order for $9.00.  In this letter, Plaintiff noted that he did not receive any prior notices, apologized for his actions, and asked the New York State Thruway Authority to accept the $9.00 as full payment and to waive any additional late fees.  A true and correct copy of this notice, along with a money order receipt in the amount of $9.00, is attached hereto as **Exhibit D**.

40. On October 20, 2018, Plaintiff received a bill from the New York State Thruway Authority, advising him that he had crossed the Grand Island Bridge on September 13, 2018 (twice), September 15, 2018 (once), September 20, 2018 (once), and September 21, 2018 (once).  The total amount in tolls that was owed was $5.00.  He was also charged with a $7.00 "overdue balance" which was not explained on the bill. The notice also included "Late/Other Fees" of $5.00 which are not explained on the notice.  A true and correct copy of this notice is attached hereto as **Exhibit E**.

6

41. On October 24, 2018 Plaintiff received another notice.  This notice indicated that Plaintiff had also passed through the Grand Island Bridge cashless facility on July 26, 2018 (three times), and on August 2, 2018 (once).  As with the prior notice, it asserted that he had failed to respond to two previous notices, and that he owed $204.00 (with $200 amounting to "administrative fees").  Plaintiff disputes he received any prior notice regarding these alleged violations.  Moreover, the notice did not provide any mechanism for him to dispute either that he had passed through the toll, or the imposition of the administrative fee.  A true and correct copy of this notice is attached hereto as **Exhibit F**.

42. On November 4, 2018 Plaintiff paid the October 20, 2018 bill by sending a money order to the New York State Thruway Authority for $18.00. A copy of the money order receipt is attached hereto as **Exhibit G**.

43. Plaintiff also paid an additional $204.00 towards the October 24, 2018 bill.  A true and correct copy of a money order receipt for the $204.00 payment is attached hereto as **Exhibit H**.

44. Thereafter, Plaintiff received a notice from Linebarger, Goggan, & Sampson, LLP demanding $204.00 in payment. A true and correct copy of this notice is attached hereto as **Exhibit I**.

45. Plaintiff retained counsel, who contacted Linbarger, Goggan & Sampson, LLP.  It was acknowledged that Plaintiff paid $204.00, but it was claimed that he still owed $204.00 related to toll crossings from July and August.

46. It is not clear how Plaintiff's $9.00 payment in September of 2018 was credited.

47. Plaintiff has already paid Defendants $231.00.

48. It was very burdensome for Plaintiff to pay this amount, given that he has a fixed and very limited income through SSI.

49. The SSI program is a federal program designed to help certain indigent individuals meet their basic food, shelter, and clothing needs.

50. Plaintiff is unable to pay an additional $204.00 to Defendants and continue to meet his basic food, shelter, and clothing needs.

51. Moreover, if Plaintiff does not pay $204.00, the notice indicates that he will be subject to having the registration to his vehicle canceled.

52. Plaintiff is unable to walk long distances or take public transportation and therefore needs his vehicle to meet his basic food, shelter, and clothing needs.  Plaintiff also needs his vehicle to make it to appointments for various medical conditions.

**FACTS PERTAINING TO PLAINTIFF LARRY BIESUZ JR**

53. Larry Biesuz Jr. is the registered owner of three vehicles, one of which has a New York License Plate # of HCL6667.

54. Larry Biesuz Jr.'s wife is the owner of an E-ZPass transponder.  At all times relevant to this complaint, the EZ-Pass transponder has been affixed to the vehicle with a License Plate # of HCL6667.

55. As to Plaintiff Bieusz Jr.'s other vehicles, no EZ-Pass was affixed to these vehicles. Mr. Biesuz Jr. would simply pay his monthly invoices that he received though the mail from Defendant NYSTA for any toll crossings he may have made in that month. He denies ever neglecting any invoice or notice from Defendant NYSTA.

56. On January 8, 2019 Plaintiff received a notice from Defendant LGBS claiming that he owed $68.20 in violations and fees related to one of Plaintiff's vehicles which did not

have an EZ-Pass.  Although Plaintiff disputes that he owes this money, because he always pays his monthly invoices, he paid the $68.20 to make the issue go away.

57. On January 22, 2019 Plaintiff received another notice from Defendant LGBS, stating that he owed $2,296.50 for an unspecified number of toll violations.

58. The notice alleges that this was in reference to License Plate #HCL6667.  However, as noted, this would be impossible because, at all times relevant to this complaint, that vehicle has had an EZ-Pass system.  A true and correct copy of this notice is attached hereto as **Exhibit J**.

59. Because there was EZ-Pass linked to the vehicle in question, and he always paid his monthly invoices on his other two vehicles, Plaintiff Biesuz Jr. called Defendant NYSTA.  He was told that they passed on any records of his alleged violations to Defendant LGBS.

60. When Plaintiff contacted LGBS by phone they stated that, in fact, Defendant NYSTA had the records.

61. Because Defendant LGBS had no records to justify its pursuit of the debt, it verbally informed Plaintiff that his account would be put into "dispute status."

62. Plaintiff subsequently received a second notice from Defendant LGBS dated February 28, 2019.

63. Once again, this letter stated that $2,296.50 was owed for alleged toll violations.  It made no reference of his account being placed into dispute status, nor did it indicate what the result of their review of his dispute revealed.

64.  In fact, this letter falsely stated that Defendant Linebarger, Goggan, Blair & Sampson had not responded to the previous correspondence.  Based on this misperception,

Defendant LGBS stated it would assume the debt was valid.   A true and correct copy

of this letter is attached as **Exhibit K**.

### FACTS PERTAINING TO PLAINTIFF DAVID TREDO

65. Plaintiff David Tredo is the registered owner of a vehicle with a NY License Plate
#HTN3212.

66. On May 28, 2018 Plaintiff Tredo received a notice from Defendant NYSTA, alleging
that he had crossed the Grand Island Bridge six times in May of 2018, and therefore
owed $6.00.  A true and correct copy of this notice is attached hereto as **Exhibit I**.

67. Plaintiff Tredo called Defendant NYSTA, and was informed that if he signed up to
have an EZ-Pass account, and if he linked that account with a credit card, that the
$6.00 owed would simply be debited out of his account.

68. Plaintiff Tredo signed up for an EZ-Pass account and linked it to his credit card upon
this representation.

69. However, on August 2, 2018 Plaintiff Tredo received a notice stating that he had not
paid the $6.00.  An administrative fee of $50.00 was imposed for each of his six
violations.   The letter demanded that he pay $306.00.   It did not include any
mechanism for him to dispute the imposition of the administrative fees.  A true and
correct copy of this notice is attached hereto as **Exhibit J.**

### CLASS ALLEGATIONS

70. Plaintiffs bring this case as a class action under Rule 23 of the Federal Rules of Civil
Procedure 23.  A class action is appropriate and preferable in this case because:

> a. **<u>Numerosity:</u>** The Grand Island Bridge is heavily used and there are
> likely to be hundreds, if not thousands of individuals who are similar

situated to Plaintiffs in that they have already paid, or are being asked to pay excessive fines without due process.

b. **<u>Common Questions Predominate:</u>** There are questions of law and fact common to the class that predominates over any questions affecting only individual class members. The principal issue being whether Defendants are violating federal and state law by charging excessive fines for toll violations without due process.

c. **<u>Typicality:</u>** The Plaintiffs' claims are typical of other class members. Plaintiffs and all members of the Plaintiffs' classes have claims arising out of the Defendants' unlawful actions as alleged in this complaint.

d. **<u>Adequacy:</u>** The Plaintiffs will fairly and adequately protect the interests of the class members insofar as Plaintiffs has no interests that are adverse to the absent class members. The Plaintiffs are committed to vigorously litigating this matter. Plaintiffs have also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the individual Plaintiffs, nor their counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

e. **<u>Superiority:</u>** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently

and without unnecessary duplication of effort and expense that individual actions would engender. Prosecution of separate actions by individual members of the class would also create the risk of inconsistent and varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interests of judicial economy.

71. If the facts are discovered to be appropriate, Plaintiffs will seek to certify the class under Rule 23(b)(1), Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

72. Based on further discovery and further investigation (including, but no limited to, Defendant's disclosure of class size and net worth), Plaintiffs may, in addition to moving for class certification using modified definitions of the classes, class claims, and the class periods, seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

## COUNT ONE

### §1983 Claim under the Eighth Amendment

73. Plaintiffs hereby reallege and incorporate by reference herein, each and every allegation contained in this complaint as if fully set forth herein.

74. The actions of the Defendants alleged herein violate the Eighth Amendment's prohibition on excessive fines.

75. The fines imposed are out of proportion to the very minor offense of failure to pay a $1.00 toll.

76. The fines imposed are not designed to be proportional to the offense, but are designed to punish toll violators and to deter non-compliance with cashless tolls.

77. The imposition of this unconstitutionally excessive fine is the policy of the New York State Thruway Authority.

78. Because said Defendants operated under color of state law, subjected Plaintiffs (and those similarly situated) to the deprivation of his 8th Amendment rights, said Defendants are liable to Plaintiffs (and those similarly situated) under 42 U.S.C.§1983.

79. The actions of the Defendants in this count were reckless, willful and/or malicious and were otherwise committed with callous indifference to the rights of the Plaintiffs (and those similarly situated).

## COUNT TWO

### §1983 claim under the Fifth and Fourteenth Amendment

80. Plaintiff hereby realleges and incorporates by reference herein, each and every allegation contained in this complaint as if fully set forth herein.

81. Defendants' are sending out notices that impose outrageous fines on residents of Erie County for non-payment of cashless tolls.

82. Although these notices impose fines of $50 per alleged toll violation, they fail to provide any mechanism for residents to dispute the imposition of these fines.

83. Had Defendant provided Plaintiffs with a reasonably clear way of contesting the fines imposed for non-payment, all three Plaintiffs would have very strong arguments that the amounts they owe should be reduced, or eliminated:

a. Plaintiff Carl Kettle would have a strong argument that the amount owed should, at least be reduced by $9.00.  Moreover he denies receiving the initial notices, and thus would have good cause for the elimination of the administrative fee.  Finally, given his status as an SSI recipient, he would have a strong case for a hardship waiver.

b.  Plaintiff Larry Biesuz Jr. had an EZ-Pass account linked to the vehicle in question, and thus it is puzzling why he would owe any amount of money.  Additionally, like Plaintiff Kettle, he denies receiving any notice that he did not pay.  He has contacted Defendants asking for proof and was never provided any satisfactory response.  He would have a strong argument that some sort of error was made by Defendants and that he does not owe $2296.50.

c. Plaintiff David Tredo would have a strong argument that Defendants' actions misled him into thinking he had taken care of his bill by signing up for EZ-Pass and linking it with his credit card.

84. The common core of Plaintiff's experiences with the system created by Defendants is that they were denied any forum to dispute the imposition of the excessive administrative fees imposed on them by Defendants.

85. Plaintiff's stories are hardly unique.  Since the Grand Island Bridge switched over to cashless tolling in 2016, residents of Erie and Niagara counties have been subjected to outrageous fines, often exceeding $1,000 dollars for non-payment of tolls.[1]

---

[1]*See* WHEC.  *Taking a toll: Webster mom facing a $1,581 Thruway Bill* (February 12, 2019)   https://www.whec.com/news/taking-a-toll-webster-mom-facing-a-1581-thruway-bill/5243974/ (last accessed March 8,. 2019); Christman, Samantha.  *How the $1 Grand*

86. Many residents report that they received inadequate notice from Defendants, and only heard about their fines after the matter had already been referred to collections.[2]

87. In response to the public outcry over the excessive fines imposed by Defendants, New York State Senators Timothy Kennedy and Chris Jacobs have criticized the excessive the New York State Thruway Authority and have called for amnesty and additional reforms.[3]

88. Particularly in light of the excessive nature of these fines, and the many issues residents have noted with the system, due process required Defendants to provide some reasonably clear mechanism, with defined standards, for Plaintiffs to dispute the imposition of these fines.

---

*Island toll turned into a $1,224 bill* (Aug 8, 2018).   THE BUFFALO NEWS, https://buffalonews.com/2018/08/10/how-the-1-grand-island-toll-turned-into-a-1224-bill/ (last accessed March 8, 2019); News 4 Staff. *Cashless tolls at Grand Island bridges lead to $1,300 bill* (August 1, 2018).   WIVB.COM, https://www.wivb.com/news/local-news/cashless-tolls-at-grand-island-bridges-lead-to-1-300-bill/1338714404 (last accessed March 8, 2019). Sheer, Mark. *SHEER: Thruway Authority charges $2,300 in fines on a $46 bill* (July 23, 2018).   THE NIAGARA GAZETTE, https://www.niagara-gazette.com/opinion/scheer-thruway-authority-charges-in-fines-on-bill/article_d32ae9f0-414d-5189-b0fa-670493ff59c2.html (last accessed March 8, 2019).

[2] *See, e.g.*, Vaughters, Al.  *WNY lawmakers call on Thruway to give drivers a break*. WIVB.COM, Aug. 20, 2018,  https://www.wivb.com/news/local-news/wny-lawmakers-call-on-thruway-to-give-drivers-a-break/1383864882 (last accessed April 11, 2019) ("I never got any type of toll bill, nothing. Then I got a letter saying you owe $204 within 15 days or your registration is suspended.")

[3] *See Jacobs calls for amnesty, asks governor to sign Toll Payers' Bill of Rights* (August 20, 2018), https://www.wnypapers.com/news/article/current/2018/08/20/133772/jacobs-calls-for-amnesty-asks-governor-to-sign-toll-payers-bill-of-rights (last accessed March 8, 2019); Timothy M. Kennedy.  *Highway Robbery: After Numerous Constituents Report Outrageous Late Fees on Grand Island Tolls, Kennedy Calls on Thruway Authority to Implement Amnesty Program & Pushes for Passage of Legislation* (August 20, 2018), https://www.nysenate.gov/newsroom/press-releases/timothy-m-kennedy/highway-robbery-after-numerous-constituents-report (last accessed March 8, 2019.

89. Because said Defendant LGBS operated under color of state law, subjected Plaintiffs to the deprivation of his 5th and 14th Amendment rights, it is liable to Plaintiffs under 42 U.S.C.§1983.

90. The actions of the Defendants in this count were reckless, willful and/or malicious and were otherwise committed with callous indifference to the rights of the Plaintiff.

**COUNT THREE**

**Claim under the New York State Constitution**

91. Plaintiff hereby realleges and incorporates by reference herein, each and every allegation contained in this complaint as if fully set forth herein.

92. By reason of the foregoing, the Defendants are also liable to the Plaintiff in tort for their violations of Plaintiff's rights secured and guaranteed by Article I, §5 the of the New York State Constitution forbidding excessive fines.

93. By reason of the foregoing, Defendants are also liable to Plaintiffs in tort for their violation of Plaintiffs' rights secured and guaranteed by Article I, §6 of the New York State Constitution, which guarantees due process protections for life, liberty, and property.

**RELIEF REQUESTED**

WHEREFORE, plaintiff demands judgment against each of the Defendants for :

1. Actual and compensatory damages.

2. Punitive damages.

3. Injunctive relief

4. Costs and attorneys fees 42 U.S.C.§1988.

5. Award such other and further relief that seems just and proper.

**A JURY TRIAL IS DEMANDED ON ALL ISSUES AND ON ALL COUNTS IN THE COMPLAINT.**

Dated: April 19, 2019

/s/ Timothy Hiller, Esq.
Timothy Hiller, Esq.
Seth Andrews, Esq.
Kenneth R. Hiller, Esq.
Law Office of Kenneth Hiller
*Attorneys for the Plaintiff*
6000 North Bailey Avenue, Ste. 1A
Amherst, NY 14226
(716) 564-3288
Email: thiller@kennethhiller.com
       khiller@kennethhiller.com
       sandrews@kennethhiller.com